[No. 62-40645-3.    Division Three.    April 8, 1970.]
WILLADEE RUSSELL, *Individually and as Executrix, Respondent,* v. PERNIE ADA QUIGG, *as Administratrix, et al., Appellants.*

*Horton, Wilkins & Horton* and *Arthur R. Eggers,* for appellants.

*Alfred McBee* and *W. V. Wells,* for respondent.

EVANS, C. J.—This is an action for wrongful death arising out of an automobile collision that occurred in the state of Oregon. The parties are residents of the state of Washington. Defendant, as administratrix of the estate of her late husband, Clayton Cochran, appeals from a judgment entered upon a jury verdict in favor of plaintiff, as executrix of the estate of her deceased husband, Frank Russell.

At the close of plaintiff's case the defendant challenged the sufficiency of the evidence, moved for a nonsuit, and upon its denial stood upon her motion. Plaintiff's evidence establishes that the 2-car collision out of which this litigation arises occurred about 9:30 p.m. February 18, 1967 near Hermiston, Oregon, on Oregon Highway 30, near its intersection with an approach road leading from a sales barn where horses were sold at auction. At this point Highway 30 runs east and west and is known as a through highway. The approach road runs north and south. The sales barn is located several hundred feet north of Highway

30, and consists of several buildings and a large parking area. The approach road is 49 feet 10 inches wide and makes a T-intersection with Highway 30. It is a well-used road, as established by evidence that on the day of the accident a sale was conducted at the sales barn and was attended by two or three thousand people.

The Oregon Highway Department was in the process of adding two lanes to Highway 30 in the area involved, thus changing it from a 2 to a 4-lane highway, with an unpaved median approximately 100 feet wide separating the two paved sections. Highway 30, west of the scene of the accident, was generally a 4-lane highway; however, it changed to a 2-lane highway about a mile and a quarter west of the accident scene, and remained two lanes to and beyond the scene of the accident. At the scene the highway was 26 feet wide, paved with asphalt, and the center was marked with a broken white line. It had flat, graveled shoulders approximately 5 feet wide.

Beginning about three-quarters of a mile west of the area involved a driver approaching from the west was confronted with eight warning signs, four on each side of the highway, reading "Detour", "Curve", "Hazardous Detour Ahead, Curve". All signs contained flashing, battery-powered yellow lights. One of these signs was diamond-shaped with a black symbol on a yellow background depicting a curved arrow, indicating an S-turn ahead, and immediately below it was a rectangular sign that read, "35 M.P.H."

Approximately 200 feet east of the T-intersection, traffic was being shifted approximately 100 feet to the north from the existing 2-lane highway to two new lanes which, when construction was completed, would be the north two lanes westbound of the 4-lane highway. This was being done by means of an S-curve. There was a white metal guardrail on the south side of the S-curve which extended the entire length of the curve. There were flashing yellow lights about 3 feet above ground level, extending the entire length of the guardrail.

Defendant's intestate, Clayton Cochran, the owner and

operator of an Oldsmobile automobile, was traveling east on Highway 30, returning from Portland to his home in Walla Walla. Cochran was accompanied by a passenger, Robert Griffith. The other vehicle involved in the accident was a Ford truck with a covered van used for hauling horses, and was owned and operated by Charles Armstrong. His passenger was Frank Russell, the plaintiff's testator. The Armstrong truck traveled south on the approach road from the sales barn, stopped, made a left turn to the east on Highway 30, and after traveling a short distance was struck from the rear by the Oldsmobile driven by the defendant's intestate, Cochran.

The only party to the accident who testified was the driver of the truck, Armstrong. Robert Griffith, the passenger in the Cochran vehicle, although present during the trial, did not testify. Armstrong testified he and his passenger Frank Russell got into the truck near the sales barn. Armstrong started the motor and "warmed it up" for about 10 or 12 minutes. He turned on the blower to clear the windshield and windows, and turned on the lights of the truck. He testified his vision was clear. The patrolman who investigated the accident testified it was raining just before the accident but, he believed, the rain had stopped and a slight breeze was blowing. Armstrong testified that when he left the sales barn by way of the approach road there was a passenger car ahead of him that stopped at the stop sign at the entrance to Highway 30. He stopped behind that car. After it had proceeded onto the highway, Armstrong pulled up to the stop sign and stopped again. At this time he looked both ways, saw the lights of an approaching car in the distance to his right, and then told his passenger Frank Russell to open the door. Russell opened the door, looked to his right and left and then said, "It is clear." Armstrong then proceeded onto the highway, turning to the east. His truck was equipped with a 3-speed gear shift transmission. After he had completed his turn and shifted from low into high gear he proceeded east for a distance which the investigating officer determined to be 111 feet,

when his truck was struck from the rear by the Cochran automobile.

The force of the impact was such that the dual rear wheels of the Armstrong truck were sheared off and came to rest approximately 60 feet south of Highway 30. The Armstrong truck spun around three times. The first time both doors flew open; the second time Frank Russell was thrown out of the truck; and the third time Armstrong was thrown out, striking the guardrail at the S-curve at a point approximately 200 feet east of the intersection. The truck came to rest on Highway 30, facing southwest near the guardrail where Armstrong had been thrown from the truck. The Oldsmobile was completely demolished. After the impact the Oldsmobile traveled in a semi-circle to the north for a distance of 195 feet. It made a gouge in the surface of the highway and left a furrow approximately 6 inches deep over the entire 195 feet. It came to rest after striking a parked car. Cochran, the driver of the Oldsmobile, was killed instantly. Russell, the passenger in the Armstrong truck, died as a result of his injuries.

Defendant makes seven assignments of error, which fall into two general categories: (1) those relating to the court's rulings and instructions on the speed of the Cochran vehicle, and (2) those relating to the court's rulings and instructions on the question of contributory negligence of Frank Russell, passenger in the Armstrong truck.

Whether there was evidence the Cochran vehicle was traveling at an unlawful speed as it entered the intersection is determinative of the issues presented by defendant's first assignments of error. Under Oregon law, Clayton Cochran had the right-of-way unless he forfeited it by entering the intersection at an unlawful speed. ORS 483.202; and *Bush v. Johnson*, 237 Ore. 173, 390 P.2d 932 (1964), wherein the court, in considering the rights of a driver traveling on a through highway, stated:

Although plaintiff was the favored driver, his right of way was not absolute. *Simmons v. Holm*, 229 Or 373, 407-408, 367 P.2d 368 (1961); *Rauw v. Huling and*

*Sparks*, 199 Or 48, 60, 259 P.2d 99 (1953). If plaintiff approached the interection at an unlawful speed he forfeited the right of way. ORS 483.202; *Dorey v. Myers*, 211 Or 631, 635, 317 P.2d 585 (1957).

Defendant first contends there was no evidence of excessive speed of the Cochran vehicle. It is true no witness estimated the speed of that vehicle in terms of miles per hour. However, in addition to what has already been related regarding evidence as to the nature and force of the impact between the two vehicles traveling in the same direction, there was testimony of an independent witness that as the defendant's car approached the scene of the collision it made a "roar like an airplane taking off." When the cars came together there was a sound like "metal was flying" and the collision made a loud noise "like things were flying to pieces."

As the trial court observed in denying defendant's motion for nonsuit,

> You can't take these pictures of the plaintiff, together with the oral testimony, and say that this deceased defendant was driving 90 miles an hour, or 75 miles an hour, but you can certainly draw the conclusion he wasn't driving 15 miles an hour, and I think there would be a strong inference that the jury could draw from this circumstantial evidence that he was doing more than 35.

With this conclusion we agree. However, the defendant's principal objection to this conclusion, and the court's instruction that the designated speed was 35 miles per hour, is the contention there was no evidence that the designated speed at the time and place in question was 35 miles an hour. It is defendant's contention the designated speed was 55 miles per hour.

The basic law as to speed in Oregon is found in ORS 483.102, which provides:

> Basic speed rule.  (1)  No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway, the hazard at intersections and any other conditions then existing.

(2) No person shall drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care.

ORS 483.104 provides for certain designated speeds in certain areas; for instance, 20 miles per hour near schools, 25 miles per hour in residential areas, etc., and 55 miles per hour in other locations. State highways, such as Highway 30, fall within the classification of "other locations." However, these designated speeds are not exclusive. ORS 483.106 gives the state highway commission power to raise or lower designated speeds, and provides:

[T]he commission may designate a different speed thereupon, which shall be effective when appropriate signs giving notice thereof are erected upon such highway.

ORS 483.104 also provides that any speeds in excess of those designated shall be prima facie evidence of violation of the basic speed law.

There was an abundance of evidence from which the jury could find that Cochran drove his vehicle into the intersection at a greater speed than was reasonable and proper under the then circumstances, in violation of ORS 483.102(1), and at a speed which did not permit him to exercise proper control of his vehicle, in violation of ORS 483.102(2), and that by so doing he forfeited whatever right-of-way he had.

As stated by the Oregon court in *Lemons v. Holland*, 205 Ore. 163, 284 P.2d 1041, 286 P.2d 656 (1955):

But the rate of speed in miles per hour at which the defendant was traveling is not the important consideration. In every case where speed is involved as an element of negligence in the operation of an automobile, the question is primarily whether such speed was excessive under all the facts, circumstances, and conditions existing at the time, and not how fast the automobile was traveling in

specific miles per hour. *Bailey v. Rhodes, Adm'r,* 202 Or 511, 523, 276 P.2d 713. . . .

. . . *It is the violation of the basic rule as to speed and not merely traveling in excess of the designated speed, that is unlawful. Designated speeds are not "speed limits". With certain exceptions there are no "speed limits" as such under the statutes of this state. Burrows v. Nash,* 199 Or 114, 120, 259 P.2d 107; *Rauw v. Huling and Sparks,* 199 Or 48, 55, 259 P.2d 99.

(Italics ours.) Defendant does not disagree with the rule as stated in *Lemons v. Holland, supra.* It is defendant's contention the jury was improperly required to consider any possible violation of ORS 483.102 within the framework of an erroneous instruction that the designated speed at the time and place in question was 35 miles per hour.

The trial court found that the diamond-shaped yellow sign indicating an S-curve, with the rectangular sign reading 35 M.P.H., was a sign erected in accordance with the provisions of ORS 483.106. Accordingly, the court instructed that the designated speed at the time and place in question was 35 miles per hour. Defendant makes no contention that this sign was not a properly authorized official highway sign erected by the state highway department. It is defendant's contention that 35 miles per hour was merely a "suggested" speed, not a "designated" speed within the meaning of ORS 483.106. This contention arises from an isolated reference in the testimony of the state police officer to 35 M.P.H. as indicating a suggested speed. He placed no particular significance upon the use of the word "suggested", and was not examined concerning its use.

Defendant's only authority for the proposition that there is a significant distinction between "designated" and "suggested" speeds is found in copies of the Oregon Driver's Manual and the Washington Driver's Manual, submitted by affidavit of counsel in support of defendant's motion for a new trial. The Washington Driver's Manual, at 28, in making reference to a sign identical to the one in question, states:

*Turn, Curve and, Winding Road Signs* are diamond-

shaped with black symbols on a yellow background. They are used to warn drivers of turns in the roadway. Below these signs are small yellow rectangular signs with black letters indicating "XX" miles per hour for safe, comfortable driving speed.

No similar language is found in the Oregon Driver's Manual. However, defendant asserts that a construction similar to that contained in the Washington manual should apply to similar signs in Oregon, namely, that "35 miles per hour is intended merely to suggest a 'safe, comfortable driving speed' ". We cannot agree. The substantial differences in Washington and Oregon statutes relating to the speed of motor vehicles do not permit the application of such a construction. Furthermore, if such a construction were to be applied it would be insufficient to overcome other evidence that the 35 M.P.H. sign was erected under the provisions of ORS 483.106.

It was not error to instruct the jury that the designated speed was 35 miles per hour.

Defendant next assigns error to the trial court's refusal to rule the passenger, Frank Russell, guilty of contributory negligence as a matter of law. It is defendant's contention that when Russell, after opening the door and looking, stated, "It is all clear," he [Russell] assumed the same duty as the driver to see what was there to be seen.

The rule is clear that, in order to find plaintiff guilty of contributory negligence as a matter of law, the facts must be such that all reasonable men must draw the same conclusion from them. *Emanuel v. Wise*, 11 Wn.2d 198, 118 P.2d 969 (1941), *Hoffman v. Gamache*, 1 Wn. App. 883, 465 P.2d 203 (1970). Armstrong testified that when he stopped at the intersection he observed headlights of a vehicle approaching from the east at a considerable distance. Russell then opened the door and, after looking both ways, stated it was "all clear." At this point, based on Armstrong's observation of vehicle headlights in the distance, and Russell's observation that the road was clear, a reasonable conclusion could be drawn that both Armstrong

and Russell had a right to assume that the oncoming Cochran vehicle was traveling at a lawful speed under existing circumstances. Therefore, it was not error for the trial court to refuse to find the passenger Frank Russell guilty of contributory negligence as a matter of law.

■ Defendant next assigns error to the manner in which the question of the contributory negligence of the passenger Frank Russell was submitted to the jury. In instruction No. 1, the issues instruction, the court instructed the jury as follows:

### 1.

The defendant maintains that the proximate cause of the collision was the action of the driver Armstrong in driving his vehicle into the oncoming traffic and that the decedent Russell was contributorily negligent in giving the driver Armstrong an all clear signal indicating that it was safe to enter the highway.

Instruction No. 4 defined contributory negligence and instructed the jury that

Contributory negligence bars recovery on the part of a person suffering injury or damage, even though the opposing party is negligent.

### 6.

Any negligence on the part of the driver of the truck in which plaintiff's husband was riding, cannot be charged against the plaintiff, unless you further find that the plaintiff's husband and Charles B. Armstrong were engaged in joint venture, under instruction No. 21.

Defendant's assignment of error, however, relates directly to instruction No. 14. This instruction advised the jury of the duty of the driver of a motor vehicle to look out for other vehicles on the highway. This was one of defendant's proposed instructions, and the only claimed error is that the instruction was incomplete. In taking exception to instruction No. 14 it was stated:

I think in this case there should be the additional, "I instruct you it is the continuing duty of a driver of a motor vehicle . . ." I think there is an issue in the case and we have excepted, "I further instruct you if a

passenger acts as a lookout, he has the same duty as a driver," because on this—this limits it and I think we need that additional instruction.

However, counsel for the defendant did not propose any additional written instruction or ask for the opportunity to do so. It will be noted that defendant's informal proposal was that the court instruct, "if a passenger acts as a lookout, he has the same duty as the driver." Defendant cites as authority for such an instruction *Savage v. Palmer*, 204 Ore. 257, 280 P.2d 982 (1955). There, the Supreme Court of Oregon held:

> The duty of a passenger in an automobile is set forth in *Burns v. Coast Auto Lines*, 134 Or 180, 292 P. 1038, in which similar facts were presented. An instruction was approved which imposed upon a passenger the duty of a reasonably prudent man under the circumstances, one of the circumstances being that he was a passenger and *not the driver*. If he had reasonable opportunity to learn of danger and avoid it, it would be his duty to perform such act of remonstrance or control, if any, as a reasonably prudent man would exercise under the circumstances.

(Italics ours.) Contrary to the interpretation which defendant apparently places upon this language, we interpret it to mean the duty of the driver and of a passenger are not identical. It was the duty of the defendant, not the trial court, to draft an instruction setting forth the duties of a passenger. As stated in *Roumel v. Fude*, 62 Wn.2d 397, 383 P.2d 283 (1963):

> We have frequently pointed out that error cannot be predicated on the giving of an instruction which correctly states the law but does not embody a given qualification or exception, if no instruction stating the qualification or exception was requested by the complaining party.

Judgment affirmed.

GREEN and MUNSON, JJ., concur.

---

Petition for rehearing denied May 18, 1970.