FILED
COURT OF APPEALS
DIVISION II

2013 AUG -6 PM 1:02

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42398-7-II |
| Respondent, | |
| v. | |
| GUY JAY RALPH, JR., | PUBLISHED IN PART OPINION |
| Appellant. | |

HUNT, J. — Guy Jay Ralph, Jr. appeals his jury trial convictions and sentences for second degree robbery, second degree taking a motor vehicle without permission, and witness tampering. He argues that (1) the robbery and the taking a motor vehicle without permission convictions constitute double jeopardy, (2) the State failed to prove both "to convict" instruction alternative means of committing witness tampering and the trial court failed to give a jury instruction on alternative means unanimity, (3) the trial court erroneously included a prior Oregon conviction in his offender score because the State failed to prove it comparable to a Washington offense, and (4) the trial court erred in imposing legal financial obligations (LFOs) without finding that he had the ability to pay.

In the published portion of this decision, we hold that Ralph's robbery and taking a motor vehicle convictions constitute double jeopardy under the facts of this case. In the unpublished portion of this decision, we further hold that (1) Ralph fails to show manifest constitutional error

under RAP 2.5(a)(3) to merit addressing for the first time on appeal his unpreserved challenges to (a) the State's failure to elect one alternative means of committing witness tampering, (b) the sufficiency of evidence to support the alternative means, and (c) the trial court's failure to give the jury an alternative means unanimity instruction; (2) the State failed to establish that Ralph's prior Oregon conviction was legally comparable to a Washington felony; and (3) his LFO issue is not ripe for review.

We vacate Ralph's conviction for second degree taking a motor vehicle without permission and remand to the trial court to strike this conviction from the record and to resentence him. At Ralph's resentencing hearing on remand, the State may present additional evidence to show the factual comparability of his prior Oregon conviction. We otherwise affirm.

FACTS

I. CRIMES

In February 2011, Guy Jay Ralph, Jr., helped Leroy Hampton move belongings from Emily Beadle's trailer house to a new residence. After unloading his truck, Hampton told Ralph that they needed to return to Beadle's for another load. While Ralph was talking on Hampton's cellular telephone en route, Ralph asked Hampton to drive to another location to look at a bridge on which he (Hampton) had worked. Hampton heard Ralph ask whether the person to whom he was speaking on the phone wanted him (Ralph) "to go through the second job, or something like that"; the other person respond, "Yes"; and Ralph reply that he would "do it." Verbatim Report of Proceedings (VRP) (July 19, 2011) at 35. Ralph then gave the phone back to Hampton and asked him to "pull over." VRP (July 19, 2011) at 36. Feeling uncomfortable, Hampton initially refused to stop.

Ralph threatened to "beat [Hampton's] face in," and Hampton stopped. Ralph accused Hampton of stealing a "$10 knife" from Beadle's house. VRP (July 19, 2011) at 38. Hampton denied this accusation and, to demonstrate that he did not have the knife, emptied his pockets and took off his jacket for Ralph to search. Ralph "punched [Hampton] in the face," knocked him to the ground, and "came at [him] again"; Hampton "crawled under the door and . . . took off running." VRP (July 19, 2011) at 38.

Ralph drove away in Hampton's truck, which contained Hampton's jacket, wallet, and cell phone. Hampton ran to the nearest house and called 911. Officers later found Hampton's truck behind a store two or three miles from where the assault had occurred; Hampton's jacket was still in the truck, but his GPS system, his wallet, some stereo equipment, and his cell phone were missing.

Hampton identified Ralph in a photomontage. Ralph denied having taken Hampton's truck and asserted that Hampton had dropped him off at the trailer park where Beadle lived. The police arrested Ralph.

While detained in the Clallam County Jail awaiting trial, Ralph wrote a letter to his sister, stating:

> Hey sister, . . . could you do me a great big favor before my trial? Please. I need Emily (Welcome Inn number 44) to write a statement that on the morning of the 27th of February Leroy Hampton picked [sic] me and Denise around 1:00 a.m., and dropped us off around 4:00 a.m., and he was fine. Also, I need you to get ahold of Denise, Emily should know how, and have her say the same thing, only that Leroy, her and I drove to the Lower Elwha, he unloaded his truck and we came back. If you guys can't get ahold of her just leave her out of it. But have Emily write one please. And have her and Mike write that I stayed with them the rest of the day. Unless you want to write one for me. And Kim and mom. If not please make sure Emily will please. I need the statements to get to my attorney . . . . I'm putting his card in with this letter. Please make sure this

gets done. And write back soon and let me know. Love me always, your little brother.

VRP (July 20, 2011) at 37-38.

## II. PROCEDURE

The State charged Ralph with second degree robbery (of Hampton's "personal property," otherwise unspecified), second degree taking a motor vehicle (Hampton's truck) without permission, third degree theft (of unspecified "property or services of another"),[1] and tampering with a witness (by attempting to induce a person to testify falsely or to withhold from a law enforcement agency information relevant to a criminal investigation). Clerk's Papers (CP) at 92-93. The case proceeded to a jury trial.

### A. Trial

At trial, the State's witnesses testified as described above. Ralph, the sole defense witness, testified that (1) Hampton arrived at Beadle's after midnight and he (Ralph) volunteered to help Hampton move, (2) he (Ralph) had not been angry with Hampton, and (3) Hampton had dropped him off near the trailer park and left. Ralph denied having assaulted Hampton and having taken his truck or other property. Ralph admitted having written the letter to his sister asking her to contact witnesses; but he claimed that he had not intended to ask anyone to change his or her testimony and that he had just wanted these people to contact his attorney and say that he (Ralph) had been with them on the day of the assault.

The trial court gave the jury the following "to convict" witness tampering instruction:

---

[1] At trial, the State unsuccessfully tried to prove this count by offering evidence that Ralph stole the items in Hampton's truck bed when Ralph stole the truck.

> To convict the Defendant of the crime of TAMPERING WITH A WITNESS as charged in Count IV, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That during the period of time from on or about March 27, 2011, to on or about May 6, 2011, the Defendant *attempted to induce a person to testify falsely* or *withhold from a law enforcement agency information which he or she had relevant to a criminal investigation*; and
> (2) That the other person was a witness or a person the Defendant had reason to believe was about to be called as a witness in any official proceedings or a person whom the Defendant had reason to believe might have information relevant to a criminal investigation.

CP at 74 (Instruction 20) (emphasis added).[2] Although Ralph objected to this "to convict" instruction on various grounds, he did not request a unanimity instruction for the alternative means mentioned in part (1) of this instruction. Nor did he object to the instruction's language "withhold from a law enforcement agency information which he or she had relevant to a criminal investigation." Consequently, the trial court did not advise the jury that it must be unanimous about the alternative means used to commit witness tampering.

In their closing arguments, the State and Ralph *mentioned* both witness tampering means from the "to convict" instruction: attempt to "induce a person to testify falsely" and to "withhold from a law enforcement agency information which he or she had relevant to a criminal investigation." But the substance of their arguments *focused solely* on attempt to "induce a person to testify falsely." VRP (July 20, 2011) at 135.

---

[2] The trial court also instructed the jury:

> A person commits the crime of TAMPERING WITH A WITNESS when he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding, or a person whom he or she has reason to believe may have information relevant to a criminal investigation to testify falsely.

CP at 73 (Instruction 19).

The jury found Ralph guilty of second degree robbery of Hampton's truck, second degree taking a motor vehicle (Hampton's truck) without permission, and tampering with a witness. It found him not guilty of third degree theft of Hampton's personal items in his truck.

## B. Sentencing

At sentencing, the State conceded that Ralph's robbery and motor vehicle taking convictions "merge[d] for purposes of sentencing" because the jury had acquitted him of the theft charge, which had been based on theft of the items in the stolen truck. VRP (Sentencing) at 4. Neither the parties nor the trial court, however, addressed whether the robbery and the motor vehicle taking convictions were the same crime for double jeopardy purposes.

Also at sentencing, Ralph argued that his prior 2004 Oregon conviction for unauthorized use of a motor vehicle should not be included in his offender score because the Oregon offense's "elements" were not the same as those for the analogous Washington offense and that his Oregon conviction should not be included in his offender score because it was "not counted" for sentencing on a previous otherwise unrelated Washington conviction. VRP (Sentencing) at 9. The State argued that the Oregon offense had the same elements as Washington's taking a motor vehicle offense. Without addressing the factual comparability of the Oregon offense, the trial court included the Oregon conviction in Ralph's offender score.

Despite Ralph's assertion that he was "indigent," the trial court imposed LFOs, without making written or oral findings about Ralph's present or future ability to pay them. VRP (Sentencing) at 19. And, although the trial court listed each LFO separately, it did not expressly designate which were mandatory or discretionary.

Ralph appeals his convictions and specific aspects of his sentence, including imposition of LFOs.

## ANALYSIS

### DOUBLE JEOPARDY

Ralph first argues that his convictions for second degree robbery and second degree taking of a motor vehicle without permission (TMVWP) violate his constitutional right to be free from double jeopardy. He did not challenge these two convictions on double jeopardy grounds below when the State conceded that these two crimes "merged" for sentencing purposes and the trial court sentenced him for only the robbery. VRP (Sentencing) at 9. But because this issue constitutes a manifest constitutional error for purposes of RAP 2.5(a)(3)'s preservation exception, we address this issue for the first time on appeal, agree with Ralph that these two convictions constitute double jeopardy under the facts of this case, and remand to the trial court to vacate his TMVWP conviction.

Multiple Punishments/Convictions for Same Crime

Our federal and state constitutions prohibit being *punished*[3] twice for the same crime. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; RAP 2.5(a)(3); *State v. Freeman*, 153 Wn.2d 765, 770-71, 108 P.3d 753 (2005). Ralph's two convictions are not the same crime in law because their statutory elements differ. *See Freeman*, 153 Wn.2d at 777, 772. Nevertheless, this conclusion does not resolve the issue before us. Even where, as here, a defendant receives only one sentence for the two crimes, double jeopardy can also encompass being twice *convicted* for the same crime: Absent clear legislative intent to the contrary, two *convictions* constitute double jeopardy when the evidence required to support a conviction for one charge is also sufficient to support a conviction for the other charge, even if the more serious charge has additional elements. *See Freeman*, 153 Wn.2d at 777.

---

[3] We recognize that the legislature may constitutionally authorize multiple punishments for a single course of conduct. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). Here, the second degree robbery (RCW 9A.56.190) and second degree TMVWP (RCW 9A.56.075(1)) statutes do not expressly authorize separate punishments. Moreover, the legislature included them in the same chapter of the criminal code, suggesting that it intended one conviction for a single theft of a motor vehicle, even if chargeable both as a robbery and a TMVWP, depending on the facts surrounding the particular crime. *See State v. Hughes*, 166 Wn.2d 675, 685, 212 P.3d 558 (2009); *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 51, 75 P.3d 488 (2003); *Calle*, 125 Wn.2d at 779.

Here, however, we do not address whether the legislature intended multiple punishments for stealing a truck with force from the owner's presence and simply stealing a motor vehicle without force in the owner's absence because (1) the State conceded at sentencing that Ralph's robbery and TMVWP counts merged for sentencing purposes, and (2) the trial court imposed a single punishment for both convictions.

To determine whether Ralph's second degree robbery and TMVWP convictions constitute double jeopardy, we turn to the merger doctrine[4] and another related double jeopardy exception, which allows two convictions where one crime is independent from (rather than merely incidental to) the other crime or involves a separate injury. *See Freeman*, 153 Wn.2d at 777, 779. Second degree robbery requires that the defendant (1) unlawfully take; (2) personal property; (3) from the person of another or in his presence; (4) against that person's will by use of or threat of force, violence, or fear of injury.[5] RCW 9A.56.190.[6] Robbery also includes the

---

[4] As Division One of our court has explained:

> The merger doctrine precludes conviction for one or more offenses based on acts which are so much a part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not be attributed to them. If such acts have no independent purpose or effect, they become merged into the completed substantive crime. *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979)[, *overruled in part on other grounds by State v. Sweet*, 138 Wn.2d 466, 980 P.2d 1223 (1999)]; *State v. Hoyt*, 29 Wn. App. 372, 628 P.2d 515 (1981); *State v. Ingham*, 26 Wn. App. 45, 612 P.2d 801 (1980).

*State v. Penn*, 32 Wn. App. 911, 914-15, 650 P.2d 1111, *review denied*, 98 Wn.2d 1012 (1982) (TMVWP and robbery were two distinct and separable acts; TMVWP was incidental to robbing victim of wallet and had independent purpose of enabling Penn to flee the crime scene; distinguished from cases where one charged crime could not practically have been committed without commission of the other charged crimes).

[5] A person commits second degree robbery if "he or she commits robbery." RCW 9A.56.210. The legislature amended RCW 9A56.210 in 2011. LAWS OF 2011, ch. 336, § 380, effective July 22, 2011. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute. RCW 9A.56.190 defines "robbery" as follows:

> A person commits robbery when he or she unlawfully takes personal property from the person of another or *in his or her presence against his or her will by the use or threatened use of immediate force*, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial.

(Emphasis added).

non-statutory element of specific intent to steal, which our Supreme Court has held is the equivalent to specific intent to deprive the victim of his or her property permanently. *State v. Sublett*, 176 Wn.2d 58, 88, 292 P.3d 715 (2012) (citing *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005)).

Second degree taking of a motor vehicle without permission (TMVWP) also requires that the defendant take another person's property; but it further requires taking a specific type of property, namely a motor vehicle, unlike second degree robbery, which does not specify the type of property taken.[7] Also, unlike second degree robbery, second degree TMVWP does *not* require (1) that the taking occur from the victim or in his presence; (2) that the taking be against the victim's will by use or threat of force, violence, or fear of injury; or (3) that the taking be done with intent to deprive the victim of his or her property permanently. RCW 9A.56.075(1).

Although the statutory elements of the two crimes differ, as charged and proved here, second degree TMVWP is the functional equivalent of a lesser included of the second degree robbery. As applied here, both crimes required "taking" another person's property, Hampton's

---

[6] The legislature amended RCW 9A.56.190 in 2011. LAWS OF 2011, ch. 336, § 379, effective July 22, 2011. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

[7] RCW 9A.56.075(1) defines second degree taking of a motor vehicle without permission:
> A person is guilty of taking a motor vehicle without permission in the second degree if he or she, without the permission of the owner or person entitled to possession, intentionally takes or drives away any automobile or motor vehicle, whether propelled by steam, electricity, or internal combustion engine, that is the property of another, or he or she voluntarily rides in or upon the automobile or motor vehicle with knowledge of the fact that the automobile or motor vehicle was unlawfully taken.

truck,[8] without his permission; proving these two main facts proved second degree TMVWP. The following additional facts, however, elevated Ralph's TMVWP from non-forceful "joyriding" to second degree robbery: Ralph punched Hampton in the face and knocked him to the ground to gain possession of Hampton's truck and drive it away.[9] Under the facts charged and proved here, the evidence supporting Ralph's robbery conviction was also sufficient to support his TMVWP conviction. Thus, the second degree robbery and the second degree TMVWP, as charged and proved here, are the same in fact: The robbery was based on the single act of Ralph's taking a motor vehicle from a single victim by force; and proof of the theft element of the robbery also proved the TMVWP charge.

As our Supreme Court has long acknowledged, the constitutional prohibition against double jeopardy is violated when "'the evidence required to support a conviction [of one crime] would have been sufficient to warrant a conviction upon the other.'" *Freeman*, 153 Wn.2d at 772 (citing *State v. Reiff*, 14 Wash. 664, 667, 45 P. 318 (1896) (quoting *Morey v.*

---

[8] Although TMVWP specifically requires taking a motor vehicle and robbery requires taking personal property generally, a person's motor vehicle is also personal property. Thus, theft of a motor vehicle can be used, as here, to satisfy the theft of personal property element of a robbery conviction. *See e.g. State v Crittenden*, 146 Wn. App. 361, 367, 189 P.3d 849 (2008) ("Both theft and second degree [taking of a motor vehicle] require an unauthorized taking of property."), *review denied*, 165 Wn.2d 1042 (2009).

[9] Because we assume the jury followed the trial court's instructions, we can infer from the jury's second degree robbery guilty verdict that the jury found all the elements in the second degree robbery "to convict" instruction, including that Ralph intended to deprive Hampton of his truck permanently. *See State v. Kirkman*, 159 Wn.2d 918, 937, 155 P.3d 125 (2007).

*Commonwealth*, 108 Mass. 433, 434 (1871)))).[10] Accordingly, we hold that, under the facts here, Ralph's convictions for second degree robbery and second degree taking of a motor vehicle without permission constitute double jeopardy. We vacate Ralph's conviction for second degree taking of a motor vehicle without permission and remand for the trial court to strike that conviction from Ralph's judgment and sentence. *State v. Turner*, 169 Wn.2d 448, 455, 466, 238 P.3d 461 (2010) (on remand for a double jeopardy violation, we must reverse and remand with instructions to vacate the lesser punished crime).

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## WITNESS TAMPERING: ALTERNATIVE MEANS

For the first time on appeal, Ralph argues that we should vacate his witness tampering conviction and remand for a new trial on this charge because the State failed to elect between the alternative means charged and it failed to present sufficient evidence to prove both means, in particular the second alternative means, attempting to induce withholding of information from

---

[10] *See also Hughes*, 166 Wn.2d at 682-84 (convictions for both rape of child and second degree rape constituted double jeopardy where: (1) both offenses arose out of one act of sexual intercourse with the child victim; (2) although the statutory elements of the two crimes differ, both require proof of non consent (the victim's child status and resultant inability to consent)). The statutes were both meant to protect individuals who are unable to consent by reason of their status, whether the status is due to young age, mental incapacity, or physical helplessness. *Hughes*, 166 Wn.2d at 684.

Similarly here, both convictions for second degree robbery and second degree TMVWP were based on Ralph's single act of stealing Hampton's truck, the only stolen item that the State proved beyond a reasonable doubt, as evinced by the jury's verdicts of guilty of taking Hampton's truck without permission and of second degree robbery, and not guilty of third degree theft of the less valuable personal property, the items in the back of Hampton's truck.

No. 42398-7-II

law enforcement. Because Ralph failed to raise this alleged error below and fails to show that it falls within RAP 2.5(a)(3)'s manifest constitutional error exception to the preservation requirement, we do not address the merits of his argument on appeal.

A. Failure To Preserve Alleged Instructional Error

The trial court instructed the jury about the alternative means of committing witness tampering without also instructing that, in order to convict, the jury had to be unanimous about the alternative means used. But Ralph failed (1) to ask the trial court to instruct the jury that, in order to convict him of witness tampering, it must agree unanimously on the alternative means he used to commit this crime; and (2) to object to lack of such an instruction. Therefore, unless he can show manifest constitutional error under RAP 2.5(a), justifying an exception to the preservation requirement, we will not address this argument.[11] As we previously explained, to be "manifest," Ralph must establish that the asserted constitutional error resulted in actual prejudice by identifying its practical consequences in the trial of the case. *State v. Davis*, 175 Wn.2d 287, 344, 290 P.3d 43 (2012), *petition for cert. filed*, No. 12-9685 (U.S. Apr. 5, 2013).[12]

---

[11] As we noted in *Bertrand*:

> At the outset, we note that Bertrand did not comply with CrR 6.15(c) when she failed to object to the trial court's special verdict unanimity jury instruction. CrR 6.15(c) requires timely and well-stated objections to jury instructions "'in order that the trial court may have the opportunity to correct any error.'" *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988) (quoting *City of Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)). In failing to object below, Bertrand did not give the trial court an opportunity to correct this instructional error; thus, she has not preserved this error for appeal.

*State v. Bertrand*, 165 Wn. App. 393, 399-400, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012). The same rationale applies here.

[12] *See also Bertrand*:

13

Ralph fails to meet this burden.

### B. Assumed Constitutional Character of Unpreserved Error

A unanimity instruction is required where an offense may be committed in more than one way. *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988). Failure to give such an instruction, however, does not require reversal of the conviction if the State presented sufficient evidence to support each alternative means. *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012); *State v. Randhawa*, 133 Wn.2d 67, 73-74, 941 P.2d 661 (1997). The test for determining sufficiency of the evidence is whether, after viewing the evidence "in a light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Sweany*, 174 Wn.2d at 914 (quoting *Randhawa*, 133 Wn.2d at 73).

Ralph does not argue that the evidence was insufficient to support the first alternative means for committing witness tampering—attempting to induce a person to testify falsely. Rather, he challenges the sufficiency of the evidence to support only the second alternative means—attempting to induce a person to withhold from a law enforcement agency, information relevant to a criminal investigation. For purposes of our analysis here, (1) we assume, without

---

As we recently held in *State v. Grimes*, [165 Wn. App. 172, 267 P.3d 454 (2011), *review denied*, 175 Wn.2d 1010 (2012)] for this RAP 2.5(a)(3) exception to apply, an appellant must show both that (1) the error implicates a specifically identified constitutional right, and (2) the error is "manifest" in that it had "practical and identifiable consequences" in the trial below.

*Bertrand*, 165 Wn. App. at 400 (footnotes omitted). As in *Bertrand*, Ralph fails to show any practical and identifiable consequence at trial flowing from the lack of a "unanimity as to means" jury instruction for the witness tampering charge; therefore, again as in *Bertrand*, we do not address the merits of his challenge. *Bertrand*, 165 Wn. App. at 403.

deciding, as Ralph asserts,[13] that the evidence is insufficient to support this second alternative means; and (2) thus, we acknowledge that he has identified a potentially constitutional error for RAP 2.5(a)(3) purposes.

That Ralph has shown a potentially constitutional error, however, does not automatically warrant reversal of his conviction: He must also satisfy the "manifest" component of the RAP 2.5(a) exception to the preservation requirement—that is, he must show the claimed error had practical and identifiable consequences at trial. *State v. Grimes*, 165 Wn. App. 172, 186-87, 267 P.3d 454 (2011), *review denied*, 175 Wn.2d 1010 (2012).

### C. Alleged Error Not Manifest

Although, in closing, both counsel *mentioned* the two alternative means described in the witness tampering "to convict" instruction, their arguments did not focus on the "withholding evidence" alternative. In addition to noting the jury instructions, the State briefly mentioned that Beadle had information contrary to what Ralph had wanted her to say[14]; the predominant remainder of the State's witness tampering argument focused on Ralph's attempts to have someone provide him with a "false alibi" by providing his counsel with a specific, detailed

---

[13] We agree with Ralph that, although his letter to his sister arguably attempted to induce a person to testify falsely, it did not expressly attempt to induce anyone to withhold information from law enforcement.

[14] The State argued:

> And, in fact, [Ralph] even conceded that the part about Denise going with him and Leroy was false and that was something that he . . . wanted . . . Emily to put in the statement and give to his attorney. At that particular point in time there was a trial pending, this information that—which he laid out very specifically would have given him an alibi, but she had information contrary to the that that both the Defendant and Leroy were gone about the same time.

VRP (July 20, 2011) at 131-32.

15

statement about the events near the time of the crime.[15]  Similarly, defense counsel's argument also focused on the "false testimony" alternative, rather than on the "withholding information" alternative.[16]  Moreover, this focus of both counsel's closing arguments was consistent with the evidence presented at trial, which also focused *only* on Ralph's attempt to induce a person to testify falsely.  In contrast, as Ralph indirectly concedes, the State neither presented evidence about the second alternative means nor argued this second means as a basis for finding Ralph guilty of witness tampering.  Thus, there is "'no danger the jury was not unanimous in finding [Ralph] guilty based on'" the "false testimony" alternative means.  *State v. Witherspoon*, 171 Wn. App. 271, 287, 286 P.3d 996 (2012) (quoting *State v. Lobe*, 140 Wn. App. 897, 909, 167

---

[15] For example, the State argued:
> So [Ralph] was setting [Emily] up to *testify falsely*, basically making false statements so she would be called as a witness for him at trial.

VRP (July 20, 2011) at 133 (emphasis added).  The State also argued:
> He wrote a letter asking a person to contact Emily and that person was supposed to give Emily specific directives as to what she was supposed to say and it was very detailed, it was not just what happened that day.  She was to say I left at this time, I came back, Leroy was fine and this is what happened for the rest of the day.  This is something that he was directing her to do in order to—in order to make sure that he was not held accountable for what happened that day which was that he robbed Leroy Hampton, that he took his truck, and that he retained some of the property from that truck which Mr. Hampton was not able to recover.

VRP (July 20, 2011) at 133-34.

[16] For example, defense counsel argued:
> [T]here's no evidence whatever in this case that my client attempted to have any of these people go to the police, to a law enforcement agency of any kind, to the sheriff or anybody, to give *false testimony*.  It was only to talk to the lawyer.

VRP (July 20, 2011) at 136 (emphasis added).  Defense counsel also argued:
> So the State has fallen significantly and importantly short on the witness tampering in that there's no evidence in this case whatsoever that my client attempted to have people give *false testimony* to a law enforcement agency or anybody related to it.

VRP (July 20, 2011) at 137 (emphasis added).

P.3d 627 (2007) (Hunt, J., dissenting)), *review granted*, 177 Wn.2d 1007 (2013). And Ralph has failed to show that this unpreserved error was "manifest" to qualify for the RAP 2.5(a) exception to the preservation requirement. Therefore, we do not further consider his unpreserved jury instruction argument.

PRIOR OREGON CONVICTION COMPARABILITY

Ralph next argues that the trial court erred in finding his 2004 Oregon conviction legally comparable to a Washington offense and, therefore, the trial court should resentence him without considering this prior conviction. The State concedes the trial court erred when it ruled that Ralph's 2004 Oregon conviction was legally comparable to the analogous Washington offense; but it argues that, rather than vacating Ralph's sentence, we should remand to allow the State to establish factual comparability. Accepting the State's concession, we also agree with and accept the State's proposed remedy.

Ralph argues that we must vacate his sentence and remand for resentencing without considering the Oregon conviction. The State argues that we must remand and allow the State to present additional evidence to establish that the Oregon crime was factually comparable to a Washington felony offense because Ralph's objection at the sentencing hearing was limited to the Oregon offense's elements. The State is correct. At sentencing, Ralph objected only to the legal comparability of the Oregon offense; thus, the State was not called on to present evidence relevant to the factual nature of Ralph's Oregon offense.

As in *State v. Jackson*, 129 Wn. App. 95, 108-09, 117 P.3d 1182 (2005), *review denied*, 156 Wn.2d 1029 (2006), (1) we accept the State's concession that the trial court erred in finding Ralph's Oregon offense legally comparable to the prior Oregon offense; and (2) because (a) the

State had neither need nor opportunity to prove factual comparability[17] and (b) the record before us on appeal does not show whether the Oregon offense was factually comparable to a similar Washington offense, we remand for a hearing to determine the factual comparability of the two crimes[18] in conjunction with Ralph's resentencing for his robbery conviction. *See* RCW 9.94A.535.[19]

---

[17] *See State v. Thiefault*, 160 Wn.2d 409, 417, 158 P.3d 580 (2007).

[18] As our Supreme Court has held:
> If the elements of the foreign offense are broader than the Washington counterpart, the sentencing court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute. In making its factual comparison, the sentencing court may rely on facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt.

*Thiefault*, 160 Wn.2d at 415 (citations omitted).
> The only evidence presented at sentencing relevant to the factual nature of the Oregon offense was the Oregon indictment, which stated:
> > The said defendant, on or about the 23rd day of July, 2003, in Coos County, Oregon, did unlawfully and knowingly *exercise control over* a vehicle, to-wit: a car, without the consent of the owner, Tammy Foster; contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

CP at 26 (emphasis added). Ralph pled guilty to that charge. Although Ralph testified at trial here about the circumstances of his prior Oregon conviction, *see* verbatim report of proceedings (July 20, 2011) at 76, the factual comparison here must be based on "*facts in the foreign record that are admitted, stipulated to, or proved beyond a reasonable doubt.*" *Thiefault*, 160 Wn.2d at 415 (emphasis added). Ralph's testimony here was not based on the foreign record; thus, we cannot consider those facts. Exercising control over another person's vehicle is a broad term that could include taking or driving away another's vehicle, but nothing in the record explains how Ralph "exercis[ed] control." CP at 26.

[19] The legislature amended this statute in 2011. LAWS OF 2011, ch. 87, § 3, effective July 22, 2011. The amendment is not relevant to this case; accordingly, we cite the current version of the statute.

DISCRETIONARY LEGAL FINANCIAL OBLIGATIONS

Ralph also argues that we should vacate from his judgment and sentence the trial court's imposition of discretionary[20] LFOs ($500 in court-appointed attorney fees and a $192 sheriff's service fee) because he is indigent and the trial court made no oral or written findings that he had the ability to pay them.[21] This argument also fails.

The trial court may order a convicted felon to repay court costs, including attorney fees, as part of his judgment and sentence. RCW 10.01.160(1); *State v. Smits*, 152 Wn. App. 514, 519, 521, 216 P.3d 1097 (2009).[22] The trial court may not, however, require an indigent

---

[20] Ralph does not challenge, and thus we do not address, the trial court's imposition of $600 in *mandatory* LFOs. Br. of Appellant at 23 ("[T]he mandatory assessments were properly imposed."). *State v. Curry*, 118 Wn.2d 911, 917-18, 829 P.2d 166 (1992), in which our Supreme Court rejected an indigent defendant's constitutional challenge to imposition of the mandatory victim penalty assessment under former RCW 7.68.035(1) (1991), is consistent with Ralph's position. *See also* Br. of Appellant at 23 (challenging only the "discretionary costs and fees" imposed).

[21] We are aware that other Division Two panels have not reached the ripeness rationale, on which we base our decision here, and instead have declined under RAP 2.5(a) to consider the defendant's unpreserved challenge to the trial court's failure to enter findings of fact and conclusions of law about his ability to pay LFOs. *See, e.g., State v. Blazina*, ____ Wn App ____; 301 P.3d 492 (2013), *petition for review filed*, No. 89028-5 (Wash. July 8, 2013). *But see State v. Bower*, 64 Wn. App. 808, 810, 827 P.2d 308 (1992) (Division One of our court exercising its RAP 2.5(a) discretion to *accept* review of the defendant's unpreserved challenge to the trial court's failure to consider and to make findings about his ability to pay before imposing LFOs, even though this issue did not raise a manifest error affecting a constitutional right under RAP 2.5(a)(3)'s exception to the preservation requirement); *State v Calvin*, ____ Wn. App. ____, 302 P.3d 509, at 521 n.2 (2013) (Division One allowing the defendant to challenge for the first time on appeal the trial court's entering a "boilerplate" finding of his ability to pay LFOs and the lack of evidence to support this finding because "illegal or erroneous sentences may be challenged for the first time on appeal") (citing *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999)).

[22] *See also Bertrand*, 165 Wn. App. at 405 (citing *State v. Curry*, 62 Wn. App. 676, 680, 814 P.2d 1252, *aff'd*, 118 Wn.2d 911, 829 P.2d 166 (1991)); *State v. Crook*, 146 Wn. App. 24, 27, 189 P.3d 811 (2008) ("Inquiry into the defendant's ability to pay is appropriate only when the State enforces collection under the judgment or imposes sanctions for nonpayment; a defendant's

defendant to reimburse the State for such costs unless the defendant then has or will have the means to do so in the future. RCW 10.01.160(3); *see State v. Curry*, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992). Thus, if *collection* of LFOs later presents a financial hardship, a defendant may petition the court to modify his LFO payments. RCW 10.01.160(4). Accordingly, the time to examine a defendant's ability to pay is when the government seeks to collect those LFO costs. *Smits*, 152 Wn. App. at 523-24.

> As Division One of our court recently noted:

> It is well-established that [RCW 10.01.160(3)] does not require the trial court to enter formal, specific findings. *See* [*Curry*, 118 Wn.2d at 916]. Rather, it is only necessary that the record is sufficient for us to review whether the trial court took the defendant's financial resources into account. *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 [(2012)]. But, where the trial court does enter a finding, it must be supported by evidence.

*State v Calvin*, ___ Wn. App. ___, 302 P.3d 509, 521 (2013).

---

indigent status at the time of sentencing does not bar an award of costs."), *review denied*, 165 Wn. 2d 1044 (2009). Unlike the facts in *Bertrand*, however, here, the trial court did not enter any findings about Ralph's ability to pay; thus, we need not address *Bertrand*'s remand to strike unsupported findings.

Here, the trial court did not enter formal findings about Ralph's ability to pay his LFOs. Nevertheless, the record is sufficient for us to review whether the trial court took into account his financial resources.[23] Moreover, Ralph is currently imprisoned for having committed armed robbery, not for failure to pay his LFOs. Thus, the trial court's failure to make findings about Ralph's ability to pay at the time of sentencing[24] does not warrant vacation of the LFOs it imposed. *State v. Bower*, 64 Wn. App. 808, 812-13, 827 P.2d 308 (citing *State v. Baldwin*, 63 Wn. App. 303, 310-11, 818 P.2d 1116, 837 P.2d 646 (1992)), *review denied*, 119 Wn.2d 1016 (1992).[25]

---

[23] Despite his assertion of indigency, Ralph also testified at trial that he had worked as a logger or a fisherman. Thus, at the time of sentencing, the trial court had before it evidence of Ralph's ability to pay his $692 in discretionary LFOs.

[24] As Ralph notes in his brief, "[T]he checkbox in the judgment and sentence stating 'the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein' is not checked." Br. of Appellant at 22 (quoting CP at 10).

[25] In *Bower*, Division One of our court held that "formal findings" about the defendant's ability to pay LFOs "were unnecessary since adequate procedural safeguards existed within the applicable statutes":

> "[T]he meaningful time to examine the defendant's ability to pay is when the government seeks to collect the obligation. RCW 10.01.160 provides, as did the statute upheld in *Fuller* [*v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974)], that at the time payment is to be enforced the defendant will not be held in default if such payment would impose a "manifest hardship" on the defendant or the defendant's family. The defendant may petition the court at any time for remission or modification of the payments on this basis. Through this procedure the defendant is entitled to judicial scrutiny of his obligation and his *present* ability to pay at the relevant time. In contrast, the inquiry at sentencing as to *future* ability to pay is somewhat speculative and does not necessarily threaten incrimination."

*Bower*, 64 Wn. App. at 813 (imposition of mandatory victim restitution, former RCW 9.94A.142 recodified as RCW 9.94A.753 (2000), *see* LAWS OF 2001, ch. 10, § 6, and mandatory victim penalty assessment, former RCW 7.68.035) (quoting *Baldwin*, 63 Wn. App. at 310-11 (footnotes omitted.)). Thus, "any inquiry at sentencing as to future ability to pay is necessarily speculative." *Bower*, 64 Wn. App. at 814 (citing *Baldwin*, 63 Wn. App. at 311). *But see contra*,

No. 42398-7-II

We vacate Ralph's second degree taking a motor vehicle without permission conviction and remand to the trial court (1) to strike that conviction from his judgment and sentence, and (2) to conduct a new sentencing hearing, at which the State may present additional evidence showing the factual comparability of his prior Oregon conviction. We otherwise affirm.

_____
Hunt, J.

I concur:

_____
Bjorgen, J.

---

*Calvin*, ___ Wn. App. at ___, 302 P.2d at 513 (Division One case holding: "Because there is no evidence to support the trial court's finding that Calvin has the ability to pay court costs and the record does not otherwise show that the trial court considered Calvin's financial resources, we remand for the trial court to strike the finding and the imposition of court costs.").

*See also Curry*, 62 Wn. App. at 681-82 (quoting *United States v. Pagan*, 785 F.2d 378, 381-82 (2d Cir.), *cert. denied*, 479 U.S. 1017 (1986)) ("'It is at the point of enforced collection . . ., where an indigent may be faced with the alternatives of payment or imprisonment, that he 'may assert a constitutional objection on the ground of his indigency.'"); *Curry*, 118 Wn.2d at 918 n.3 and text ((1) "[A]ny argument that imprisonment for an unpaid fine is unconstitutional is premature" because there was "[n]o defendant presently before the court claim[ing] to be incarcerated for failure to pay"; (2) "there are sufficient safeguards in the current sentencing scheme to prevent imprisonment of indigent defendants"; and (3) because "contempt proceedings for violations of a sentence are defined as those which are *intentional*, . . . no defendant will be incarcerated for his or her inability to pay the penalty assessment unless the violation is willful." (emphasis added) (internal citations omitted)).

22

JOHANSON, A.C.J. (concurring) — I concur with the majority opinion but write separately regarding Ralph's legal financial obligation (LFO) challenge because I would follow our analysis in *State v. Blazina*, ___ Wn. App. ___, 301 P.3d 492 (2013). I would decline to reach the merits of the LFO issue because Ralph did not object when the trial court failed to find that Ralph had a present or future ability to pay LFOs and when the trial court imposed the LFOs. Accordingly, I would hold that Ralph did not properly preserve the issue for appellate review. RAP 2.5(a).

Johanson, A.C.J.